IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                                                                         No. 23-cr-01620-KWR

JOSHUA GONZALES,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT DUE TO PRE-INDICTMENT DELAY**

THIS MATTER comes before the Court on Defendant's Opposed Motion to Dismiss the Indictment Due to Pre-Indictment (**Doc. 86**). After reviewing the parties' briefings and the relevant law, the Court finds that the Defendant's motion is not well-taken, and therefore, is **DENIED**.

## BACKGROUND

On November 1, 2023, the United States filed an indictment charging Defendant with two counts of first-degree murder in violation of 18 U.S.C. §§ 1152 and 1111. **Doc. 3** (redacted indictment). The indictment alleged that on or about May 30 or May 31, 2019, Defendant murdered John Does 1 and 2. **Doc. 1**. There was a span of four years, five months, and twenty-four days between the crime and when the Government filed the indictment. **Doc. 86 at ¶2**. According to Defendant, law enforcement suspected him of being involved in the crime two days after the offense based on eyewitness testimony, but the Government did not indict him until nearly four and half years later. *Id.* **at ¶3**.

In the intervening time, several witnesses who Defendant argues are crucial to his defense died. Defendant alleges that Paul David Romero could provide statements to contradict the Government's version of the timeline of John Doe 1's death by testifying to the fact that he had

1

seem John Doe 1 alive on the night of May 31, 2019. *Id.* at ¶6. Mr. Romero died on November 9, 2023. *Id.* Defendant also alleges that his alibi defense "depended upon Paul David Romero, because his testimony that he was sure that he had seen John Doe 1 alive the evening of May 31, 2019, is what made defendant's other alibi witnesses relevant." *Id.* at ¶7.

Mr. Romero's testimony allegedly began a chain of alibi witnesses who could, in their aggregate, create a complete alibi for the murders. While there are other witnesses in the chain, some of whom are also deceased, Defendant's Motion relies primarily on Mr. Romero's death because "absence renders Mr. Gonzales's alibi defense no longer viable because the defense can no longer point to eyewitness testimony that Paul David Romero was 'sure' he had seen John Doe 1 alive the night of Friday May 31, 2019." *Id.* at 8–9.

On June 29, 2019, the Government received video evidence capturing the residence at issue in the Taos Pueblo from May 30, 2019, to May 31, 2019. **Doc. 86 at ¶4**. The video allegedly establishes a timeline for the homicides. *Id.* The Government did not disclose the video until April 25, 2025. **Doc. 86 at ¶4**. Because it now appears that the Government's theory is that the homicides happened around 10:00 p.m. on May 30, 2019, "[t]he inability of the defense to establish that John Doe 1 was alive after 10:00 p.m. on May 30, 2019, due to the loss of Mr. Paul David Romero's testimony renders all of Mr. Gonzales's subsequent alibi witnesses of no moment." *Id.* **at 9**. Defendant argues that without Mr. Romero's testimony that he had seen John Doe alive on May 30, 2019, the chain of witnesses who can provide a complete alibi for Defendant on May 31, 2019, are irrelevant and now useless. *Id.* It appears that Mr. Romero's testimony was thus the lynchpin for Defendant's alibi during the 48-hour span in which the homicides might have occurred. *Id.*

Without the now-deceased eyewitnesses' testimony, Defendant argues that he will have no way to refute the Government's evidence. *Id.* **at ¶7.** The Government's delay, he argues, irreparably prejudiced his case because there is no way to get that testimony back. *Id.* More specifically, Defendant argues that the Government acted with reckless disregard for the probable impact on Defendant's ability to present its case because the delay stretched through the entirety of the COVID-19 pandemic. *Id.* **at 11**. Mr. Romero was roughly 57 years old, which placed him in a higher risk category for death from COVID-19. *Id* **at 12**. Defendant argues that the Government knew that it was going to argue the general timeline of events, including that the homicides likely took place on May 30, 2019. *Id.* Thus, Defendant argues, the Government acted with reckless disregard in waiting to indict the case until November of 2023. *Id.* **at 13**. Mr. Romero died a week later, and Defendant did not find out about Mr. Romero's statement until December of 2023. *Id.* According to Defendant, knowing Mr. Romero was at higher risk for death from COVID-19 and still failing to indict the case until 2023 constitutes a due process violation. *Id.*

On May 16, 2025, Defendant thus filed this Motion to Dismiss Indictment Due to Pre-Indictment Delay. **Doc. 86**. While Defendant does address and include evidence that other alibi witnesses are deceased, his Motion focuses substantively on Mr. Romero's death and whether the delay through the pandemic constitutes reckless disregard giving rise to a due process violation. The Court considers the arguments below.

## LEGAL STANDARD

The Government's delay in indicting a defendant "solely to gain tactical advantage over the accused" deviates from the standards of fair play and decency required by the Fifth Amendment Due Process Clause. *United States v. Lovasco*, 431 U.S. 783, 795 (1977). Indictments brought

3

within the statute of limitations are presumptively reasonable, regardless of the length of delay. *Id.* at 789 ("[S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee against bringing overly stale criminal charges.") (internal quotations and citations omitted); *United States v. Revada*, 574 F.2d 1047, 1048 (10th Cir. 1978); *United States v. Marion*, 404 U.S. 307, 324 (1971). Therefore, because "statutes of limitations do not fully define defendants' rights concerning events occurring before the indictment," the Due Process Clause "has a limited role to play in protecting against oppressive delay." *Lovasco*, 431 U.S. at 788. To show that pre-indictment delay violated his due process rights, a defendant must demonstrate that (1) he suffered actual prejudice resulting from pre-indictment delay and (2) the government purposefully designed the delay to gain tactical advantage or to harass the defendant. *Garcia*, 74 F.4th at 1096 (quoting *Revada*, 574 F.2d at 1048).

Even when a defendant successfully fulfills both prongs of the test, he is not guaranteed dismissal of the indictment. *Comosona*, 614 F.2d at 696. Once a due process violation is established, the trial court must apply a burden-shifting test to determine if the appropriate remedy for the established due process violation is the dismissal of the indictment: (1) a demonstration of actual prejudice to the defendant resulting from the delay, like loss or impairment in the use of witnesses or physical evidence trial; (2) the length of the delay; and (3) the government's reasoning for the delay. *Garcia*, 74 F.4th at 1096 (quoting *Comosona*, 614 F.2d at 696).

## ANALYSIS

Defendant was indicted for murder under 18 U.S.C. §§ 1111 and 1152. There is no statute of limitations for murder, so the Government was entitled to indict at any point without worry of their window closing. Thus, the Court's analysis only considers whether the delay, even considering a lack of statute of limitations, still violated Defendant's due process rights.

I. **Defendant has demonstrated actual prejudice.**

Defendant has satisfied the first prong of the pre-indictment delay test because he can demonstrate both a loss of a key witness and can specifically articulate how that witness's loss prejudices his defense.

To meet the due process test's first prong, the defendant has the burden to demonstrate that the pre-indictment delay resulted in actual prejudice—that is, "definitive and not speculative prejudice"—that violates fundamental concepts of justice. *Id.* at 1096, 1099-1100; *United States v. Colonna*, 360 F.3d 1169, 1177 (10th Cir. 2004) (overruled on other grounds by *Henderson v. United States*, 575 U.S. 622 (2015)). The most common ways defendants demonstrate prejudice is through lost evidence or missing witnesses. *Garcia*, 74 F.4th at 1103. When arguing that the delay caused evidence to be lost, the defendant must make a connection between the lost evidence and a concrete negative impact on the defense of the case. *Id*. When arguing that the delay caused witnesses to go missing or become unavailable, the defendant must specifically describe how the missing witnesses would have aided his defense. *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983) (overruled on other grounds by *Batson v. Kentucky*, 476 U.S. 79, 106 (1986)).

Here, Defendant's Motion focuses mostly on Mr. Romero's testimony. His analysis as to the other deceased witnesses is contained to a single line, without any real analysis as to how their testimony would have aided in his defense. **Doc. 86 at 11** ("There are also two other deaths of Mr. Gonzales's alibi witnesses that cannot be replaced."). The Court will therefore only consider whether Mr. Romero's loss constitutes actual prejudice. *United States v. Murphy*, 100 F.4th 1184, 1209 (10th Cir. 2024) ("But it is not enough that the evidence has been lost or impaired; rather, the defendant must show that the loss of the particular evidence actually prejudiced the defense."). The Court finds Defendant has demonstrated Mr. Romero's death actually prejudiced his defense.

The loss of a witness creates actual prejudice where the defense demonstrates concrete and particular facts the witness would have proffered in aid of their defense. *Murphy*, 100 F.4th at 1209 ("[G]enerally," actual prejudice in the pre-indictment delay context 'take[s] the form of either a loss of witnesses and/or physical evidence or the impairment of their effective use at trial.'"). The burden is on the defendant to specifically articulate that "the loss of the particular evidence actually prejudiced the defense." *Id.*; *see also United States v. Wood*, 207 F.3d 1222, 1235 (10th Cir. 2000) (finding that the defendant's claim of pre-indictment delay was too vague and conclusory despite the fact that an autopsy of the victim's body took place 42 months after his death, "at which time the body was putrefied" and less susceptible to examination).

Defendant makes such a showing. He specifically argues that Mr. Romero was the sole witness who could provide him with the basis for his complete alibi defense. **Doc. 86 at 8**. Mr. Romero allegedly could testify to seeing John Doe 1 alive after 10:00 p.m. on May 30, 2019. ***Id.* at 9**. This is particularly important given the United States' likely intentions to argue that the homicides occurred around 10:00 p.m. on May 30, 2019. *Id.* Mr. Romero was allegedly the only witness whose testimony could contradict this theory of the crime. *Id.*; *c.f. United States v. Garcia*, 74 F.4th 1073, 1102 (10th Cir.), *cert. denied sub nom. Troup v. United States*, 144 S. Ct. 400, 217 L. Ed. 2d 216 (2023), and *cert. denied sub nom. Gallegos v. United States*, 144 S. Ct. 608, 217 L. Ed. 2d 324 (2024) ("Billy Garcia does not explain why the deceased witnesses would "have been any[ ]more helpful to [them] than those [who] survived and provided testimony distinctly adverse to [them]."). These assertions are not vague or conclusory, as the Government asserts. Rather, Defendant has specifically laid out his alibi defense and explained precisely how Mr. Romero's testimony was necessary to complete the defense. Without Mr. Romero's testimony or any other witness to replace it, Defendant loses a key piece of his defense, which prejudices his ability to

defend against the Government's case. *C.f. United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998) ("[Defendant] does not specifically allege how the witnesses' testimony would have been of benefit to his case.); *United States v. Colonna*, 360 F.3d 1169, 1177 (10th Cir. 2004) ("Mr. Colonna has not explained, for example, how the delay prejudiced him in his defense."); *United States v. Engstrom*, 965 F.2d 836, 839 (10th Cir. 1992) ("Engstrom fails to point to any specific prejudice that the delay caused him, and general allegations of prejudice do not suffice to carry the day.").

The Court will therefore find that Defendant has satisfied the first prong of the pre-indictment delay test.

## II. Defendant has not demonstrated that the Government sought a tactical advantage in delaying its indictment.

Defendant's argument falters at the second prong. He has not demonstrated that the Government clearly sought some tactical advantage in delaying its indictment.

To demonstrate the second prong of the due process test, the defendant must show that the government delayed bringing an indictment to gain a tactical advantage over the defendant. *Revada*, 574 F.2d at 1048. Defendants need not show that the government had a "subjective sinister motive" in their delay, only that the government made a "judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." *Mitchell v. Watkins*, 252 Fed. Appx. 874, 880 (10th Cir. 2007) (unpublished); *United States v. Foxman*, 87 F.3d 1220, 1223 n.2 (11th Cir. 1996). "Something more than ordinary negligence on the part of government representatives must be shown, no matter how high the actual proof of prejudice is. The government's delay must be intentional and purposeful." *United States v. Woodard*, 817 Fed. Appx. 626, 628 (10th Cir. 2020) (unpublished) (quoting *United States* v. *Comosona*, 614 F.2d 695, 696 n.1 (10th Cir. 1980)). Therefore, tactical

7

delays are distinct from investigative delays; investigative delays notably do not deprive an accused of due process, even if the accused is prejudiced by lapse of time. *Garcia*, 74 F.4th at 1105; *Lovasco*, 431 U.S. at 795.

"The Due Process Clause warrants dismissal of indictments for preindictment delay only in exceptional circumstances." *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988). And "under the *Lovasco* criteria it is extremely difficult for a defendant to prevail on a claim that the government's pre-indictment delay violated [their] due process rights." *Murphy*, 100 F.4th at 1209 (internal quotations omitted).  To prevail at the second prong, the defendant bears the burden of surmounting this high bar. *Engstrom*, 965 F.2d at 839.

Defendant fails to do so.  He argues that there was no reason for investigative delay and makes speculative assertions about the Government's alleged decision to delay indictment until just before Mr. Romero's death. **Doc. 86 at 14**.

First, Defendant's single assertion that "[t]here is no credible claim of investigative delay" does not automatically render his remaining arguments as valid. *Id.*  This is the kind of vague and conclusory allegation the Tenth Circuit prohibits. *See Jenkins*, 701 F.2d at 855.  While it is true that there is nothing in the record to suggest investigative delay, the burden lies with Defendant to demonstrate that the Government acted with tactical intent.[1]  *Engstrom*, 965 F.2d at 839; *Lovasco*, 431 at 795 ("In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused[.]'").

---

[1] Indeed, as discussed in Section III, Defendant's argument relies heavily on the COVID-19 pandemic.  The Tenth Circuit has previously found that a "heavy and active criminal docket" in the U.S. Attorney's office was a valid investigative delay.  *Engstrom*, 965 F.2d at 839.  Defendant points to the fact that the pandemic caused death and chaos in New Mexico, which would have slowed the U.S. Attorney office's caseload.  This, like other investigative delay, would not be the kind of tactical delay the Supreme Court condemns.  The Government curiously does not address this argument in its Response. **Doc. 100**.

8

Second, the argument that the Government intentionally waited to indict Mr. Romero until he was a week from death implies that the Government could have somehow foreseen Mr. Romero's death. *Id.* **at 12–13**. But there is no evidence in the record that the Government somehow could have, much less did, foresee Mr. Romero's death *or* having somehow foreseen Mr. Romero's death, that the Government intentionally waited to indict until just before he passed. *United States v. Muniz*, 1 F.3d 1018, 1024 (10th Cir. 1993) ("Muniz made no specific allegations how the government had intentionally delayed seeking an indictment in order to prejudice the defendant.").

Nor does the record support that the Government lacked knowledge of Mr. Romero's impending death but decided to wait to indict on the off chance that he would die anyway. It is a fact of life that people die, sometimes inconveniently. There is nothing to indicate that the Government intentionally delayed while waiting for this witness to die, either because they knew he would, or assumed he would. Indeed, Defendant makes no specific allegations to support a showing of tactical delay beyond some conclusory allegations, and the record does not support such a finding. *United States v. Jenkins*, 701 F.2d 850, 855 (10th Cir. 1983) ("Secondly, defendant fails to establish that the pre-indictment delay was purposefully caused by the Government to gain tactical advantage or to harass. In fact, defendant makes no allegation to that effect, nor is there evidence in the record to support such an allegation.").

Ultimately, the Supreme Court has recognized that "that the interests of the suspect and society are better served if, absent bad faith or extreme prejudice to the defendant, the prosecutor is allowed sufficient time to weigh and sift evidence to ensure an indictment is well-founded." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 563–64 (1983). Defendant has not clearly demonstrated bad faith or tactical delay by

the Government in waiting four years to indict. *Engstrom*, 965 F.2d at 839 ("The burden of proof of making this showing is on the defendant."). Absent such a showing, finding tactical delay would deviate from "elementary standard of fair play and decency" by requiring the Government to jump to indict the second they have some sort of evidence because perfectly healthy witnesses might meet their untimely end. *Lovasco*, 431 U.S. 795–96. The Court declines to do so.

### III. Defendant has not demonstrated that the Government acted with reckless disregard when it delayed in indicting Defendant.

Because Defendant cannot demonstrate intentional delay by the Government, he instead rests his second-prong argument on a novel idea: a defendant should be able to satisfy the second prong where the Government acted with reckless disregard for Defendant's case in delaying to indict. However, the Tenth Circuit has not expressly adopted this argument, borne out of Supreme Court dicta. Even if reckless disregard could satisfy the second prong, Defendant has not demonstrated that the Government acted with such disregard here.

Defendant argues that the Government acted with reckless disregard in delaying to indict Defendant during the COVID-19 pandemic because Mr. Romero was over 50, and thus at increased risk of death due to COVID-19. **Doc. 86 at 11**. Because Mr. Romero was 57 years old when he made his statement that would have aided in Defendant's defense, Defendant argues that the decision to wait to indict through the pandemic constitutes reckless disregard of probable prejudicial impact upon the defendant's ability to defend against the charges. *Id.* **at 12**. The Government argues that extending the prong to include reckless disregard would require the Government to indict before it has the evidence to prove a case, offending the principles underlying guilt beyond a reasonable doubt. **Doc. 100 at 6**.

As a preliminary matter, reckless disregard is not currently a part of the pre-indictment delay test. It is true that *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850)*

*in U.S. Currency*, citing *Lovasco*, wrote that pre-indictment claims "prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." 461 U.S. at 563. However, it did so in *dicta*, moving on to reject *Lovasco* because the instant case involved the Government's decision to seize property, not delay bringing an indictment. *Id. Lovasco* discussed reckless disregard only in the hypothetical sense: "A due process violation *might* also be made out upon a showing of prosecutorial delay incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense[.]". 431 U.S. at 796. Thus, as the Sixth Circuit has pointed out, the reckless disregard inquiry comes merely from *dicta*, not from a concrete rule. *United States v. Mason*, 911 F.2d 734 (6th Cir. 1990).

The Tenth Circuit has "declined to explicitly adopt" reckless disregard as a substitute for tactical intent when examining pre-indictment delay. *United States v. Lowe*, No. 23-2114, 2024 WL 1461253, at *2, n. 2 (10th Cir. Apr. 4, 2024); *see also Garcia*, 74 F.4th at 1097 ("Accordingly, we leave for another day the question of whether this circuit's test should be expanded [to include reckless disregard]."). The Supreme Court "leave[s] to the lower courts. . . task of applying *the settled principles of due process* that [it has] discussed to the particular circumstances of individual cases." *Lovasco*, 431 U.S. at 797 (emphasis added). Reckless disregard is far from settled, and until the Tenth Circuit directs otherwise, it does not serve as a substitute for intentional tactical delay in a pre-indictment delay challenge.

Moreover, even if the Tenth Circuit had adopted "reckless disregard of circumstances known to the prosecution, suggesting that there existed an appreciable risk that delay would impair

11

the ability to mount an effective defense," *Lovasco*, 431 U.S. at 796, n. 17, the Court would not find that Defendant had made such a showing. Defendant's sole contention is that Mr. Romero was over 50 at the time he gave his statement, and the Government knew that he was thus at some increased risk of COVID-related death because of that. **Doc. 86 at 11**. It is true that COVID-19 was particularly disruptive, but the fact that Mr. Romero was over 50 alone does not constitute reckless disregard for an appreciable risk, particularly given that Defendant does not argue that he was otherwise at risk, or indeed that he passed of COVID-19-related complications. Given that the Tenth Circuit has not recognized reckless disregard as a substitute for intentional tactical delay, Mr. Romero's single risk factor does not rise to the level of "exceptional circumstances" the Tenth Circuit requires for pre-indictment delay challenges. *Comosona*, 848 F.2d at 1113 ("The Due Process Clause warrants dismissal of indictments for preindictment delay only in exceptional circumstances.").

Additionally, if spikes in illness mandate that the Government hasten to indict for fear of losing aging witnesses, the Government would need to rush indictments during flu season or where there is a food-borne illness outbreak in the area, outbreaks that happen yearly, if not more frequently. These illnesses also involve greater risk to those of more advanced age.[2] A finding that the Government acted with reckless disregard merely because Mr. Romero was at an increased risk of illness-related complications would "subordinate the goal of orderly expedition to that of mere speed." *Lovasco*, 431 U.S. at 796 (quoting *Smith v. United States*, 360 U.S. 1, 10 (1959) (internal quotations omitted)). It would require the Government to indict before it has "sufficient time to weigh and sift evidence to ensure an indictment is well-founded," and it would make that

---

[2] *See* Center for Disease Control, "About *Salmonella* Infection," CDC.gov (Oct. 4, 2024), https://www.cdc.gov/salmonella/about/?CDC_AAref_Val=https://www.cdc.gov/salmonella/general/index.html.; Center for Disease Control, "People at Increased Risk for Flu Complications," CDC.gov (Sept. 11, 2024), https://www.cdc.gov/flu/highrisk/index.htm.

mandate annual, if not permanent. *$8,850 in U.S. Currency*, 461 U.S. at 563–64. The Court will not create such a requirement, which would harm both the Government and defendants' interests. *See Lovasco*, 431 U.S. at 791 ("From the perspective of potential defendants, requiring prosecutions to commence when probable cause is established is undesirable because it would increase the likelihood of unwarranted charges being filed, and would add to the time during which defendants stand accused but untried.").

Because the Defendant has not demonstrated a prima facie due process violation, this Court will not conduct the burden-shifting analysis to determine whether the dismissal of the indictment is appropriate. *Comosona*, 614 F.2d at 696; *Garcia*, 74 F.4th at 1096. The Court declines to dismiss the indictment due to pre-indictment delay.

## CONCLUSION

For the reasons above, the Court **DENIES** the Defendant's Opposed Motion to Dismiss the Indictment Due to Pre-Indictment Delay. **Doc. 86.**

**IT IS SO ORDERED.**

                                              /S/
                                            KEA W. RIGGS
                                            UNITED STATES DISTRICT JUDGE