IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                  No. 23-cr-01620-KWR

JOSHUA GONZALES,

        Defendant.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND DENYING DEFENDANT'S MOTION TO EXCLUDE CAST REPORT AND EXPERT SUMMARY

THIS MATTER comes before the Court on Defendant's Opposed Motion to Exclude Evidence (**Doc. 80**) and Motion to Exclude CAST Report and Expert (**Doc. 95**). After reviewing the parties' briefings and the relevant law, the Court finds that the Defendant's motions are not well-taken, and therefore, are **DENIED**.

### BACKGROUND

On November 1, 2023, the United States filed an indictment charging Defendant with two counts of first-degree murder in violation of 18 U.S.C. §§ 1152 and 1111. **Doc. 3** (redacted indictment). The indictment alleged that on or about May 30 or May 31, 2019, Defendant murdered John Does 1 and 2. **Doc. 1**. This Court issued its discovery order in this case on November 24, 2023. **Doc. 18**. In it, it established that the Government's discovery was due to Defendant within 14 days of the entry of the order. *Id.* **at 2**. The Court also imposed a continuing disclosure obligation: "if prior to or during trial a party discovers additional evidence or material which is subject to discovery or inspection under Rule 16, such party shall promptly notify the other party of the existence of the additional evidence or material." *Id.* Now at issue are two

1

motions to exclude from Defendant based on the Government's failure to comply with the discovery order's timeline.

First is Defendant's motion to exclude video from the Butterfly Healing Center that "purport[s] to capture the back of the residence where the homicides allegedly occurred between May 30, 2019, and May 31, 2019." **Doc. 80 at ¶1**. A report on the video, drafted on July 1, 2019, identified several relevant points for at least one homicide as occurring between 10:01 p.m. on May 30, 2019, and 10:15 p.m. on the same date. *Id.* The Government requested notice of Defendant's intent to proffer an alibi defense on April 8, 2024, for both May 30 and 31, 2019. *Id.* **at ¶2**. Defendant filed his Notice of Alibi Defense on April 24, 2024. **Doc. 31**. The Government turned over 48 hours of footage from the Butterfly Healing Center ("the Butterfly Center video") and the report on April 25, 2025, establishing a timeline for the homicides a year after Defendant's Notice was well outside the disclosure window established in the discovery order. **Doc. 80 at ¶4**.

Also at issue is the Government's expert witness Agent Sean Macmanus and its disclosure of CommNet Site Info and the CommNet Wireless Site Information List ("CAST Report"). Defendant alleges that metadata in the reports indicate the Government had custody, possession, and control of the CAST Report as early as June 20, 2019, and as late as August 23, 2019. **Doc. 95 at 2** ("The defense is aware of that fact because the metadata on those disclosures indicate that the files were last saved by Sean Macmanus on June 20, 2019 at 4:19 p.m. and Ken Bomer on 8/23/2019 at 6:21 p.m."). The Government filed its notice of intent to offer Agent Macmanus as an expert on April 16, 2024. **Doc. 34**. It filed an updated Notice on May 13, 2025, which included the CAST Report. **Doc. 72-2**. The Government had not previously included the CAST Report in its original Notice. **Doc. 34**. Expert disclosures were due May 2, 2025. **Doc. 44.**

Defendant now argues that the data available in the CAST Report is a portion of the information that Agent Macmanus will use to offer testimony about "every single opinion" the Government enumerated in its Notice, including (1) the manner in which cellular communications are sent through networks, (2) the manner in which the companies obtain and record device locations, (3) the general operation and location of cell phone towers and (4) the analysis of the call detail records as well as the cell site data collected in this case. *Id.* Because this Report provides the basis for Agent Macmanus's testimony, Defendant also seeks to exclude his testimony. *Id.* **at 2**. Both disclosures implicate Federal Rule of Criminal Procedure 16, so Court now considers both Motions together.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 16 requires the Court to "state a time for the government to make its disclosures." Fed. R. Crim. P. 16(a)(1)(G)(ii). "The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." *Id.* If the United States fails to comply with Rule 16's disclosure requirements, "the district court *may* order sanctions, including (1) issuance of an order demanding compliance, (2) grant of a continuance, (3) exclusion of undisclosed evidence, or (4) the imposition of any other just order." *See United States v. Brown*, 592 F.3d 1088, 1091 (10th Cir. 2009) (citing Fed. R. Crim. P. 16(d)(2)) (emphasis added). However, the Court has substantial discretion to fashion appropriate sanctions where a party violates a discovery order, including whether to sanction a party at all. *See* Fed. R. Crim. P. 16(d)(2); *United States v. Banks*, 761 F.3d 1163, 1196–97 (10th Cir. 2014) ("We review de novo whether the district court employed the proper legal standard and performed its gatekeeper role in determining whether to admit or exclude expert testimony, and we review for abuse of discretion the manner in which the district court performs this gatekeeping role." (citing

*United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)) (cleaned up)); *United States v. Charley*, 189 F.3d 1251, 1261–62 (10th Cir. 1999) ("A district court's decision to apply or not to apply sanctions 'will not be disturbed absent abuse of discretion.'" (citing *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988)).

To determine the appropriate sanction for a Rule 16 violation, the Court must consider the three *Wicker* factors: "(1) the reason for delay, including whether the non-compliant party acted in bad faith; (2) the extent of prejudice to the party that sought the disclosure; and (3) the feasibility of curing the prejudice with a continuance." *See Banks*, 761 F.3d at 1198–99 (citing *Wicker*, 848 F.2d at 1061). The *Wicker* factors "merely guide the district court in its consideration of sanctions . . . [and] are not intended to dictate the bounds of the court's discretion." *Id.* at 1199 (citing *Wicker*, 848 F.2d at 1061).

## ANALYSIS

Here, Defendant requests exclusion of the Butterfly Center video, the CAST Report, and Agent Macmanus's testimony.

### I. The Court will not exclude the Butterfly Center Video.

First, the *Wicker* factors do not support excluding the Butterfly Center video. Defendant has had significant time to address the new information, and exclusion is a drastic remedy not appropriate in this case.

#### a. *Reason for delay.*

While this Court has discretion to impose sanctions under Rule 16(d)(2), the discretion must be guided by the factors described in *Wicker*. 848 F.2d at 1061. The first *Wicker* factor—the reason for the delay—weighs against the Government. *See id.*

The Government offers a detailed explanation for how the late disclosure came to be: it received a summary of the video on November 4, 2020, as part of files from the grand jury investigation. **Doc. 103 at 2**. The Government asserts that "it does not appear that any of the actual Butterfly Healing Center video recordings were themselves a part of this electronic file" and that "[n]o corresponding physical file exists to confirm or refute whether the disks submitted to the office contained these recordings." *Id.* As discovery stretched on, the Government ultimately discovered it had disclosed neither the summary nor the video files, which it still did not possess, on April 11, 2025. *Id.* Given technical issues, the Government alleges that it took an additional two weeks to obtain, verify, and upload the files. *Id.* It delivered the files to the public defender's office on April 25, 2025 – 45 days prior to trial. *Id.*

The record does not indicate that there was bad faith on the part of the Government, despite Defendant's assertions to the contrary. *See Golyansky*, 291 F.3d at 1249 (considering bad faith as the predominant factor in evaluating exclusion as a sanction). However, the Tenth Circuit has held that "that negligence alone can justify excluding evidence." *United States v. Yepa*, 608 F. App'x 672, 678 (10th Cir. 2015); *Wicker*, 848 F.2d at 1061 (upholding a district court's Rule 16 sanction where the Government was negligent in failing to turn over an expert report). The Government concedes that the discovery order violation was the result of "an inadvertent oversight that was due to a jumbled and voluminous investigation file and . . . the complicated, voluminous, and unique file codec and the necessity of ensuring that the recordings actually functioned." **Doc. 102 at 3**. The Government was obligated to turn over the video and summary in compliance with the discovery order. While there was no bad faith, the Government was still negligent when it violated this Court's discovery order. *See Wicker*, 848 F.2d at 1061. The Court will therefore find that this factor weighs in favor of Defendant.

### b. *Extent of prejudice.*

The second *Wicker* factor favors the Government because Defendant has had significant time to address the issues that arose because of the late disclosure.

Defendant argues that the disclosure of this evidence prejudices his case because it renders it impossible to present an alibi defense. **Doc. 80 at 8**. However, the Government provided the video and summary 45 days before trial. *United States v. Moya*, 5 F.4th 1168, 1194 (10th Cir. 2021) (upholding a disclosure a month before trial); *c.f. United States v. Banks*, 761 F.3d 1163, 1199 (10th Cir. 2014) (finding prejudice where the government disclosed on the ninth day of trial); *c.f United States v. Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001) (finding prejudice where the government disclosed three days before trial). Defendant still had considerable time to investigate the evidence and adjust his defense strategy accordingly. The newly disclosed evidence is not so voluminous that it would take weeks to review; the evidence only includes about 48 hours' worth of video. *see* **Doc. 58 at 1**. Defendant has already admitted that he has reviewed the video in whole at the May 13, 2025 hearing on whether to grant a continuance following the Government's disclosure of the Butterfly Center video. *See United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (Finding that a night to review a five-page report as an adequate remedy to a discovery violation). Defendant does not argue that this evidence gives rise to a new, previously unconsidered defense. *See Jumaev*, 20 F.4th at 549 (considering "unfair surprise" as a factor for prejudice); *see also Golyansky*, 291 F.3d at 1250 (explaining that late productions can cause "unfair surprise"). Even if the video has rendered an alibi defense obsolete, Defendant has had over a year to develop other lines of defense. Given that a month and a half remained before trial when the Government disclosed the video, this factor favors the Government.

        *c. Feasibility of curing prejudice with a continuance.*

Finally, the third *Wicker* factor counsels towards the Government, as the Court has already considered the viability of a continuance, and this is not the 'rare case' necessitating exclusion.

The Court has already held a hearing on a continuance following the Government's initial disclosure and found that a continuance was neither appropriate nor in the interest of justice. **Doc. 74**. As discussed above, Defendant has already had significant time to review 48 hours' worth of footage. Defendant has not argued that he suddenly has a new defense before him and has had ample time to assess all other possible lines of defense. *See* **Doc. 74 at 9**.

However, Defendant does not request a continuance; he seeks exclusion. "It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002). "This is not that rare case, particularly given that trial [is] not underway (nor [has] a jury been empaneled)," and the fact that Defendant has had forty-five days to change strategies following the Government's disclosure. *Ivory*, 131 F. App'x at 631. The record does not demonstrate that there is any constitutional violation at issue here. *See Charley*, 189 F.3d at 1262 ("[E]xclusion of [a witness's] expert testimony . . . is almost never imposed 'in the absence of a constitution violation or statutory authority for such exclusion.'" (citing *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999))). And total exclusion "hinders, rather than forwards, the public interest in a full and truthful disclosure of critical facts." *Gonzales*, 164 F.3d at 1292 (internal quotations omitted) (citing *Taylor v. Illinois*, 484 U.S. 400, 412 (1988)). The Court does not find such a drastic remedy to be appropriate under the circumstances.

The Court will therefore deny Defendant's Motion to Exclude as it pertains to the Butterfly Center video.

## II. The Court will not exclude the CAST Report or Agent Macmanus's testimony.

Likewise, the *Wicker* factors do not support excluding the CAST Report or Agent Macmanus's testimony. Defendant has had ample time to address the small amount of new information, has had access to the raw data for a significant amount of time, and exclusion is a drastic and inappropriate remedy.

### a. *Reason for delay.*

The Government offers little reason for its delay. It asserts only that its delay "was an inadvertent oversight that resulted from what at first appeared to be complete records with the cell-site location in the call detail records." **Doc. 101 at 4**. The record here again does not indicate that there was bad faith on the part of the Government. *See Golyansky*, 291 F.3d at 1249 (considering bad faith as the predominant factor in evaluating exclusion as a sanction). However, the Government was once again negligent in its failure to comply with discovery obligations. **Doc. 101 at 4**. Even where there is no bad faith, negligence alone can justify exclusion. *See Wicker*, 848 F.2d at 1061. The Court will therefore find that this factor weighs in favor of Defendant.

### b. *Extent of prejudice.*

The second *Wicker* factor favors the Government. Defendant argues that he is "now faced with the prospect of filing a Notice of Intent to Offer Expert Testimony by an expert who has not had sufficient time or information to assess the most recent disclosures or by forgoing an expert to rebut the United States' evidence." **Doc. 95 at 8–9**. However, as the Government points out, Defendant has had "the actual conclusions with the damning tower location information . . . since December of last year and the raw data for the location of the actual specific towers in Taos (albeit without the angles of the sectors) . . . since January of last year." **Doc. 101 at 4–5**. In that time, Defendant could have onboarded an expert to sort through the data. *C.f. Adams*, 271 F.3d at 1244

8

(finding prejudice where the government had no time to mount a rebuttal three days before trial). Indeed, Defendant filed his Notice of Intent to Offer an Expert Witness to rebut these very conclusions. **Doc. 120 at 2**.

Moreover, the Court has already found that "little additional time is needed to prepare an examination of the finalized CAST report because the finalized report does not substantively differ from the previously disclosed draft CAST report, which Defendant has already had considerable time to review." **Doc. 74 at 7**. Indeed, the Court granted Defendant an extension to disclose his own CAST Expert. **Doc. 76**. And while the Government filed its Amended Expert Notice that included the CAST Report after the May 2, 2025, deadline for expert disclosures, it did so only eleven days afterwards. **Doc. 44** (Amended Scheduling Order); **Doc. 72** (Government's Notice of Intent to Offer Expert Witness Testimony of Sean Macmanus). Defendant has had a significant amount of time to prepare for trial, and the disclosures do not amount to unfair surprise. *Golyansky*, 291 F.3d at 1250 (explaining that late productions can cause "unfair surprise"). The second factor favors the Government.

       *c. Feasibility of curing prejudice with a continuance*

Finally, the third *Wicker* factor counsels towards the Government, as the Court has already considered the viability of a continuance and exclusion would be an inappropriate remedy at this stage. However, the Court will impose a lesser sanction to remedy any minimal prejudice.

The Court has already held a hearing on a continuance following the Government's initial disclosure and found that a continuance was neither appropriate nor in the interest of justice. **Doc. 74**. As discussed above, Defendant had access to the raw data for months. His expert is not faced with a daunting amount of data, but rather a set of conclusions. *See Ivy*, 83 F.3d at 1281 (upholding a court's grant of a day to review a five-page report).

9

Defendant again does not seek a continuance, but rather an exclusion. But absent bad faith or a constitutional violation, exclusion is an inappropriate remedy. *See Charley*, 189 F.3d at 1262 ("[E]xclusion of [a witness's] expert testimony . . . is almost never imposed 'in the absence of a constitution violation or statutory authority for such exclusion.'"); *Golyansky*, 291 F.3d at 1249 ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."). Moreover, like with the Butterfly Center video, total exclusion "hinders. . . the public interest in a full and truthful disclosure of critical facts." *Gonzales*, 164 F.3d at 1292 (internal quotations and citation omitted).

However, the Court recognizes that there seems to be an emerging pattern of negligence on the part of the Government that has potentially minimally prejudiced Defendant's case. The Court retains discretion to impose sanctions, even where the *Wicker* factors counsel against it. *See* Fed. R. Crim. P. 16(d)(2); *Banks*, 761 F.3d at 1196–97. To the extent Defendant is required to make any supplemental disclosure under Rule 16(b)(1)(C)(iii) due to the late disclosure by the Government, that time will be extended until June 6, 2025, as a sanction for the late expert disclosure by the Government.

## CONCLUSION

The Court therefore **DENIES** Defendant's Opposed Motion to Exclude Evidence (**Doc. 80**) and Motion to Exclude CAST Report and Expert (**Doc. 95**). To the extent a disclosure is required by Rule 16(b)(1)(C)(iii), the Court extends Defendant's disclosure deadline to June 6, 2025.

**IT IS SO ORDERED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE