**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                    No. 23-cr-01620-KWR

JOSHUA GONZALES,

        Defendant.


## OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS MADE TO INVESTIGATING AGENTS

THIS MATTER comes before the Court on Defendant Joshua Gonzales's motions to suppress. Defendant moves to suppress statements made to investigating agents on June 4, 2019, Doc. 88, and statements made to investigating agents on or about November 15 and 16, 2023, Doc. 93.[1] Defendant also moved to exclude a *Miranda* waiver signed on November 15, 2023. Doc. 132. The Court held a hearing on the motions to suppress on May 27, 2025. *See* Doc. 153. At the hearing, the Court denied Defendant's motion to exclude the *Miranda* waiver and allowed its consideration with the motion to suppress. Doc. 185, 113:17–113:19. The Court concludes that Defendant's motions to suppress, Docs. 88, 93, are not well-taken, and therefore, are **DENIED**.

## BACKGROUND

**June 4, 2019, Statements**. Defendant met with two FBI Special Agents, Agent Marcum and Agent Cobb (the "Agents"), at the Taos Probation and Parole Office. Doc. 90, Ex. A, 0:20–

---

[1] The United States has since represented that it would not use any statements obtained while Defendant was being transported from Sante Fe to Albuquerque on November 16, 2023. Doc. 185, 94:22–94:24, 115:20–115:21. As a result, only statements made on November 15, 2023, are at issue in Defendant's motion to suppress, Doc. 93. The Court does not rule on the admissibility of the November 16 statements.

0:24. At this time, Defendant was not charged with any crime. Defendant was never read his *Miranda* rights during this interview. The transcript of the interview is attached to the United States's response. *See* Doc. 102, Ex. 1.

**November 15, 2023, Statements**. Defendant was indicted on November 1, 2023. Doc. 3. Defendant was arrested on November 15, 2023. Doc. 3. The statements at issue occurred while Defendant was being transported from Taos to Sante Fe on November 15, 2023. At the outset, Defendant was read his *Miranda* rights. After being read his rights, Defendant signed a *Miranda* waiver form, Doc. 121-1, and communicated freely with officers. Defendant lodged an audio recording of the transport with the Court. *See* Doc. 94.

Defendant alleges that both sets of statements were obtained in violation of the Fifth and Sixth Amendments. *See* Docs. 88, 93.

## DISCUSSION

### I.    Motion to Exclude *Miranda* Waiver

The Court denied Defendant's motion to exclude a *Miranda* waiver signed on November 15, 2023, Doc. 132, for the purposes of the motion to suppress. Doc. 185, 113:17–113:19. Defendant argued that the Court should exclude the *Miranda* waiver, Doc. 121, Ex. 1, from being considered in his motion to suppress because the United States did not disclose it until May 23, 2025. Doc. 132 at 1.

"When the government fails to comply with a discovery order[,]" the Court considers the following to determine whether exclusion is a proper sanction:

(1) the reasons the government delayed producing the requested materials, including whether . . . the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of

the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988) (citation omitted). These factors "are not intended to dictate the bounds of the court's discretion." *Id.*

<u>Reason for delay</u>. Federal Rule of Criminal Procedure 16 provides that, "[u]pon a defendant's request, the government must disclose to the defendant . . . any relevant written or recorded statement by the defendant if" the "statement is within the government's possession, custody, or control" and "the attorney for the government knows—or through due diligence could know—that the statement exists." Fed. R. Crim. P. 16(1)(B)(i). Federal Rule of Criminal Procedure 16(c) requires "[a] party who discovers additional evidence or material before . . . trial [to] promptly disclose its existence to the other party" if "the evidence or material is subject to discovery or inspection" or "the other party previously requested . . . its production."

Here, there is no indication that the United States's attorney knew about the *Miranda* waiver. The *Miranda* waiver is not significant to the United States's case-in-chief. The United States did not know that Defendant would move to exclude the November 15 statements and Defendant does not indicate that it requested its production at an earlier time. And once the United States was ordered to disclose the *Miranda* waiver, it promptly did so. *See* Docs. 114, 121. Moreover, even if the United States did not timely disclose discovery, nothing in the record supports a finding that the United States acted in bad faith when it did not turn over the *Miranda* waiver at an earlier time; indeed, the United States had no rational reason to not disclose evidence that supports the admissibility of the statements at issue.

<u>Prejudice to Defendant</u>: Even if the United States delayed disclosing the *Miranda* waiver, its late disclosure did not prejudice Defendant. First, the *Miranda* waiver's only significance is to the question of whether the November 15 statements were constitutionally obtained; it has no

independent significance to the United State's case-in-chief. Second, as discussed *infra*, the *Miranda* waiver is only one way to prove that Defendant waived his right to counsel before making statements to investigating agents on November 15; waiver can also be established "[i]f an accused 'knowingly and intelligently' [communicates with officers without counsel present]." *Patterson v. Illinois*, 487 U.S. 285, 291 (1988); *see also United States v. Tyler*, 164 F.3d 150, 156 n.11 (3d Cir. 1998). In other words, even if the *Miranda* waiver is not considered, other means to establish a waiver persist. Third, as the Court pointed out in its order to produce exhibits, Doc. 114, the *Miranda* waiver was referenced at the beginning of the audio recording. *See* Doc. 94, Ex. BN3044, 2:20–3:24. In short, the Court requested the *Miranda* waiver to be produced to clarify evidence already in the record.

Feasibility of curing the prejudice with a continuance. In its motion, Defendant did not address "the feasibility of curing the prejudice with a continuance." *See Wicker*, 848 F.2d at 1061. Nonetheless, a continuance—or any other sanction—would not cure prejudice to the extent that it exists. Defendant does not explain what additional time to prepare would do to undermine the *Miranda* waiver. And as discussed above, a *Miranda* waiver is not the only way to show that Defendant waived his right to counsel.

In sum, the balance of *Wicker* factors goes in the United States's favor. Accordingly, sanctioning the United States by excluding the *Miranda* waiver from being considering in Defendant's motion to suppress, Doc. 93, is improper.

## II.    Legal Standard

### A.  Fifth Amendment

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[I]n order to protect the [Fifth

Amendment] privilege against self-incrimination, law enforcement officers must administer prophylactic warnings regarding the privilege to any suspect subjected to 'custodial interrogation.'" *United States v. Erekson*, 70 F.3d 1153, 1156 (10th Cir. 1995) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). This includes informing a suspect that "he has the right to remain silent, that any statement he does make may be used against him, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be provided for him." *Id.* at 1156 n.1. *Miranda* warnings are an "absolute prerequisite to interrogation." *Miranda*, 384 U.S. at 471.

Triggering *Miranda*. But "*Miranda* rights need only be given to a suspect [when] that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (citation omitted); *see also United States v. Hudson*, 210 F.3d 1184, 1190 (10th Cir. 2000) ("*Miranda* only applies when an individual is subject to 'custodial interrogation.'"). "The defendant bears the initial burden of establishing they were subject to custodial interrogation." *United States v. Martinez*, 122 F.4th 389, 405 (10th Cir. 2024) (citing *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986)).

Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980); *see also United States v. Sanchez*, 13 F.4th 1063, 1074 (10th Cir. 2021).

"An individual is 'in custody' . . . under *Miranda* if he is 'deprived of his freedom of action in any significant way' . . . or his 'freedom of action is curtailed to a degree associated with formal arrest.'" *Chee*, 514 F.3d at 1112 (citing *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)); *see also Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). This requires the Court to

5

determine whether "a reasonable person in the suspect's position would have understood the situation as the functional equivalent of formal arrest." *Chee*, 514 F.3d at 1112 (citing *Berkemer*, 468 U.S. at 442) (cleaned up); *see also Stansbury v. California*, 511 U.S. 318, 323 (1994) (per curiam) ("[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.").

Determining whether an individual is in custody "is a fact-intensive inquiry focusing on the totality of the circumstances." *Chee*, 514 F.3d at 1112 (citing *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993)); *see also Stansbury*, 511 U.S. at 322. The Tenth Circuit generally turns to three factors to inform its decision. *See United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008).

*First*, courts assess "whether the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will." *Chee*, 514 F.3d at 1112–13 (citing *Griffin*, 7 F.3d at 1518); *see also United States v. Lamy*, 521 F.3d 1257, 1263 (10th Cir. 2008); *Jones*, 523 F.3d at 1240 ("Our cases likewise establish the importance of telling suspects they are not under arrest and can terminate the encounter at will."). "[T]he lack of a police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention." *Griffin*, 7 F.3d at 1518.

*Second*, courts assess "the nature of the questioning, including whether the questioning is prolonged and accusatory." *Chee*, 514 F.3d at 1112–13 (citing *Griffin*, 7 F.3d at 1518). "[P]rolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave." *Griffin*, 7 F.3d at 1518. To assess this factor, courts "consider facts like the length of the questioning, the substance of the questions and whether they

6

were accusatory, and whether the tone was threatening." *United States v. Nahkai*, __ F.4th __, No. 24-4058, 2025 WL 1560885, at \*4 (10th Cir. June 3, 2025). "These considerations inform whether the questioning rose 'to the level of coercion.'" *Id.* (citing *United States v. Guillen*, 995 F.3d 1095, 1109 (10th Cir. 2021)). It is important to note, however, that "any interview of one suspected of a crime by a police officer will have coercive aspects to it." *California v. Beheler*, 463 U.S. 1121, 1124 (1983) (per curiam) (internal quotations and citation omitted).

*Third*, courts analyze "whether the environment was 'police dominated.'" *Chee*, 514 F.3d at 1113 (citing *Griffin*, 7 F.3d at 1518). "Where police are in full control of the questioning environment, custody is more easily found." *Griffin*, 7 F.3d at 1518–19. "Indications of whether the police are in full control may include whether the suspect was . . . isolated in a nonpublic questioning room, whether there was the threatening presence of several officers, whether there was any display of weapons or physical contact with the suspect, and whether the officer's language and tone indicated that compliance might be compelled." *Chee*, 514 F.3d at 1113 (citing *Griffin*, 7 F.3d at 1518–19). The fact that the interview occurred at a police station does not necessarily mean that Defendant was in custody. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) ("[A] noncustodial situation is not converted to [a custodial situation] simply because . . . the questioning took place in a 'coercive environment.'"); *Lamy*, 521 F.3d at 1263–64 ("[L]ocation alone does not compel the conclusion that a defendant is in custody, so long as his freedom was not curtailed to a degree similar to arrest.").

Beyond these three factors, whether the defendant voluntarily came to an interview is relevant. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) ("[The defendant] came voluntarily to the police station, where he was immediately informed that he was not under arrest."); *Chee*, 514 F.3d at 1113–14; *Beheler*, 463 U.S. at 1121–22 (holding that "*Miranda*

warnings are [not] required if the suspect is not placed under arrest, voluntarily comes to the police station, and is allowed to leave unhindered by police after a brief interview"); *Lamy*, 521 F.3d at 1264 ("[The] voluntary decision to accompany police argues against police domination."); *United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020) ("Case law is well established that a suspect is not in custody when he voluntarily cooperates with the police." (citation and internal quotations omitted) (cleaned up)).

*Miranda*: Invoking the Right to Counsel. "The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, . . . and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States*, 512 U.S. 452, 456–57 (1994) (internal citation omitted). However, "a suspect *subject to custodial interrogation* has the right to consult with an attorney and to have counsel present during questioning." *Id.* at 457 (citing *Miranda*, 348 U.S. at 469–73) (emphasis added). To be clear, the Fifth Amendment itself does not provide a pre-criminal-proceedings right to counsel; rather, *Miranda*'s right to counsel is meant as a prophylactic "measure[] to insure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). In short, a suspect has a right to counsel only if *Miranda* applies (that is, if he is interrogated while in custody).

In situations where *Miranda* does apply, "a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Davis*, 512 U.S. at 458 (citing *Minnick v. Mississippi*, 498 U.S. 146 (1990)). But this "requires courts to determine whether the accused *actually invoked* his right to counsel." *Id.* (citing *Smith v. Illinois*, 469 U.S. 91, 95 (1984) (per curiam)) (emphasis in original) (internal quotations omitted). "[T]his is an objective inquiry" looking to whether "the suspect . . . *unambiguously* request[ed] counsel." *Id.* at

459 (emphasis added). It is not enough for a suspect to make "a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel." *Id.* (emphasis in original). In short, unless the suspect "unambiguously request[s] counsel," the police remain free to continue their questioning. *Id.* at 459, 462.

B. Sixth Amendment

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defense." U.S. Const. amend. VI. "The Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Fellers v. United States*, 540 U.S. 519, 523 (2004) (citing *Brewer v. Williams*, 430 U.S. 387, 398 (1977)) (internal quotations omitted) (cleaned up).

An accused is "denied the basic protections of [the Sixth Amendment right to counsel] when there [is] used against him at his trial evidence of his own incriminating words, which federal agents had *deliberately elicited* from him after he had been indicted and in the absence of his counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964) (emphasis added). "[T]he clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer*, 430 U.S. 387, 401 (1977); *see also Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). A Sixth Amendment interrogation need not be formal (such as a police station interview) and applies to informal situations like a detective asking probing questions while transporting a defendant. *See, e.g., Brewer*, 430 U.S. at 399–400; *United States v. Henry*, 447 U.S. 264, 273 (1980) ("[If the Sixth Amendment 'is to have any efficacy it must apply to indirect and surreptitious interrogations as

well as those conducted in the jailhouse.'" (citing *Massiah*, 446 U.S. at 206)). To this point, "[t]he definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable, since the policies underlying the two constitutional protections are quite distinct." *Rhode Island v. Innis*, 446 U.S. 291, 300 n.4 (1980).

<u>Deliberate Elicitation</u>. Once the Sixth Amendment is applicable, the issue becomes whether the Government "deliberately elicited" information from the Defendant. This requires courts to decide whether "[an officer] deliberately and designedly set out to elicit information from [the defendant] just as surely as . . . if he had formally interrogated him." *Brewer*, 430 U.S. at 399. In practice, courts look to whether an officer asked a question that could trigger an incriminating response. The Sixth Amendment "does not prohibit the introduction of spontaneous statements that are not elicited by governmental action." *United States v. Henry*, 447 U.S. 264, 276 (1980) (Powell, J. concurring).

<u>Waiver of the Right to Counsel</u>. Once the Sixth Amendment right to counsel attaches and is applicable under the circumstances, the government must show that the defendant waived that right. *See generally Fellers*, 540 U.S. at 524–25 (concluding that a Sixth Amendment violation occurred "[b]ecause the ensuing discussion took place after [the defendant] had been indicted, outside the presence of counsel, and in the absence of any waiver of [the defendant's] Sixth Amendment rights"). "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo*, 556 U.S. at 786 (citing *Michigan v. Harvey*, 494 U.S. 344, 352–53 (1990)). The United States has the burden to prove that Defendant waived his right to counsel. *See Brewer*, 430 U.S. at 404 (citing *Johnson v. Zerbst*, 304

U.S. 458, 464 (1938)). The Court must "indulge in every reasonable presumption against waiver." *Id*.

"[T]he Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, 556 U.S. at 786 (citing *Patterson v. Illinois*, 487 U.S. 285, 292, n.4 (1988)). "[A]n accused who is admonished with [*Miranda* warnings] . . . has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 487 U.S. at 296. More generally, "whatever warnings suffice for *Miranda*'s purposes will also be sufficient in the context of postindictment questioning." *Id*. at 298.

"[A] waiver need not be expressly given; it may be implied if the suspect understands their rights and engages in a course of conduct indicating waiver." *United States v. Martinez*, 122 F.4th 389, 406 (10th Cir. 2024) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). For example, waiver can be established "[i]f an accused 'knowingly and intelligently' [communicates with officers without counsel present]." *Patterson*, 487 U.S. at 291; *see also United States v. Tyler*, 164 F.3d 150, 156 n.11 (3d Cir. 1998); *Butler*, 441 U.S. at 370–71. "Because the role of counsel at [postindictment] questioning is relatively simple and limited, [there is] no problem in having a waiver procedure at that stage which is likewise simple and limited." *Patterson*, 487 U.S. at 300.

## III.    Analysis

The Court must decide whether the June 4, 2019, statements made to investigating agents, Doc. 88, and the November 15, 2023, statements made to investigating agents, Doc. 93, were unconstitutionally obtained. The Court concludes that neither set of statements were obtained in

violation of the Fifth or Sixth Amendments, and therefore, Defendant's motions to suppress must be denied.[2]

A. June 4, 2019, Statements

The Court concludes that Defendant's June 4, 2019, statements were not obtained in violation of the Fifth Amendment or Sixth Amendment. As an initial matter, at the time of the interview on June 4, 2019, Defendant had not yet been indicted or arrested for the present offenses. *See* Docs. 1–3. As a result, the Sixth Amendment is inapplicable to these statements. *See Fellers*, 540 U.S. at 523 ("The Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."). Defendant argues that the Agents violated his Fifth Amendment right against self-incrimination because he was interviewed without first being read his *Miranda* rights and because the interview continued after he invoked his right to counsel. Doc. 88.

The Agents were not obligated to read Defendant his *Miranda* rights at any time during the interview. There is little doubt (and the United States does not dispute) that the Agents' questioning constituted an interrogation. *See Innis*, 446 U.S. at 300–01. But interrogation alone is not enough. *See Stansbury*, 511 U.S. at 322.

---

[2] All exhibits referenced in this opinion were admitted by the Court for purposes of these motions. *See* Doc. 185, 8:8–9:6. United States exhibit B (the transcript of the June 4, 2019, interview) is referred to in the opinion as "Doc. 102, Ex. 1." The recording of the June 4, 2019, interview, entered as United States exhibit A, is referred to as "Doc. 90, Ex. A." Defense exhibit A (the audio recording of the November 15, 2023, interaction between Defendant and officers) is referred to in the opinion as "Doc. 94, BN3044." Finally, the *Miranda* waiver form, admitted at the hearing as United States exhibit 2, is referred to as "Doc. 121-1."

The Court concludes that a reasonable person in Defendant's position would not have understood his situation to be functionally equivalent to formal arrest. *See Chee*, 514 F.3d at 1112. The first factor goes strongly in the United States's favor. Defendant was "made aware that he . . . [was] free to refrain from answering questions [and] to end the interview at will." *See Chee*, 514 F.3d at 1112–13. At the outset of the interview, FBI Special Agent Marcum stated:

> Marcum: "Okay. And so before we get started, I just want to make sure you understand here. You're not in any trouble." Defendant: "Okay." Marcum: "Okay? You're free to go at any time. If you don't want to talk to us, you don't have to talk to us."

Doc. 102, Ex. 1, 3:23–4:3. And throughout the interview, the Agents maintained that Defendant was free to not answer questions. *See, e.g.*, Doc. 102, Ex. 1, 42:13–42:19.

The second factor— "the nature of the questioning, including whether the questioning is prolonged and accusatory," *see Chee*, 514 F.3d at 1112–13—is neutral. While the interview lasted about two hours, it was not "prolonged" in any way. The Agents questioned Defendant to get his full story, and at times asked for clarifications to clear up inconsistencies in his timeline, but did not continue badgering him to get a confession or needlessly extend the interview. A review of the audio recording makes clear that the Agents were non-threatening and courteous, and the tone remained calm and conversational. *See United States v. Rogers*, 391 F.3d at 1170–71 ("The officers were courteous and non-threatening throughout this sequence."); *Chee*, 514 F.3d at 1114 (noting that the "tone remained calm and conversational throughout the interrogation"); *Nahkai*, 2025 WL 1560885, at *5. At the same time, the interview was at times "accusatory," especially in its latter half when the Agents suggested that Defendant was lying about his story. *See* Doc. 102, Ex. 1, 113:24–148:22. The questions were also focused primarily on Defendant, not on some third-party suspect. *Cf. Jones*, 523 F.3d at 1242 (explaining that the questioning "focus[ed] primarily on someone other than [the person being questioned]"). But at no point did the Agents expressly

accuse Defendant of committing the murders, and again, the substance of the questions was focused on getting Defendant's side of the story, not eliciting a confession. *See Nahkai*, 2025 WL 1560885, at *4–5. In sum, while this factor does not strongly favor the United States, the facts certainly do not cause the Court to conclude that the questioning rose to the level of coercion. *See id.* at *4.

The third factor— "whether the environment was 'police dominated,'" *see Chee*, 514 F.3d at 1113—is in the United States's favor. While the Agents outnumbered Defendant two-to-one, at no point was their presence "threatening." *See Chee*, 514 F.3d at 1113; *Nahkai*, 2025 WL 1560885, at *6 ("The presence of two officers in mostly plain clothing is not considered coercive."). The Agents did not display either their badges or firearms to Defendant. Doc. 185, 130:1–130:15; *see Nahkai*, 2025 WL 1560885, at *6. The Agents were plain-clothed and were not wearing protective gear. Doc. 185, 124:20–125:10; *see Nahkai*, 2025 WL 1560885, at *6. The Agents made clear that Defendant was free to leave at any time and never handcuffed or physically restrained him. Doc. 185, 130:12–131:5; *see Nahkai*, 2025 WL 1560885, at *5–6. Moreover, at no point did the Agents "language and tone indicate[] that compliance might be compelled." Doc. 185, 131:2–131:10; *see Chee*, 514 F.3d at 1113. While the Agents insisted that Defendant tell the truth, they did not indicate that he would be arrested if his answers fell short of a confession. *See, e.g.*, Doc. 102, Ex. 1, 144:12–149:11. And though Defendant was isolated in a nonpublic questioning room at the Taos Probation and Parole Office, Doc. 102, Ex. 1, 2:1–2:6, the fact that the interview occurred at a police station does not itself convert Defendant to being in custody. *See Mathiason*, 429 U.S. at 495; *Lamy*, 521 F.3d at 1263–64; *see Nahkai*, 2025 WL 1560885, at *6 (distinguishing the case from a case where "the suspect asked for his wife to be present during questioning but the officers denied her access to the interview room").

It is also relevant that, while Defendant came to the probation office at his parole officer's request, he voluntarily met with the Agents. Doc. 185, 138:4–139:3; Doc. 102, Ex. 1, 2:14–3:3; *see Mathiason*, 429 U.S. at 495; *Chee*, 514 F.3d at 1113–14; *Lamy*, 521 F.3d at 1264. Moreover, Defendant was allowed to leave unhindered by police after the interview. *See Beheler*, 463 U.S. at 1121–22 (holding that "*Miranda* warnings are [not] required if the suspect is not placed under arrest, voluntarily comes to the police station, and is allowed to leave unhindered by police after a brief interview"). In sum, after considering the totality of the circumstances, the Court concludes that Defendant was not in custody and therefore *Miranda* does not apply.

Even if *Miranda* does apply, Defendant did not adequately invoke his right to counsel.[3] Here, while Defendant made a reference to an attorney, he did not unambiguously request one. Defendant made the following references to an attorney:

- Defendant: "You know, I was, um – like I said, I knew that you were going to get ahold of my PO and that – that's why I had, uh, called, um . . . [Alan Maestas], . . . and I set up an appointment for 10:30, uh, to speak with you guys." Agent Marcum: "Sure." . . . Defendant: "You know, . . . I'm not really too, too smart when it comes to, like – I don't – uh, questions. I have a learning disability and stuff." Marcum: "Okay. Sure." Defendant: "You know, and I just wanted him there to explain to me certain things, you know, if I didn't understand it." Doc. 102, Ex. 1, 4:13–5:4; Doc. 90, Ex. A, 2:15–2:40.
- Defendant: "Yeah. But – but can we finish this up, uh, with Lori and with my attorney? Would that be okay Alan? You know, because, like, Lori could answer more of these questions than I can." Marcum: "If you want to stop talking, you can, but we're just trying to figure out your story." Defendant: "Yeah." Doc. 102, Ex. 1, 42:13–42:19.
- Marcum: "But you don't want to do this? You don't want to leave a DNA swab?" Defendant: "I'll do that on Thursday." Marcum: "What's the difference?" Defendant: "Because I would rather have my – I would rather have [my attorney] there alongside –" Marcum: "Okay." Defendant: "—explaining to me everything that's going on and stuff like that, too, uh, you know."

---

[3] Whether Defendant invoked his Fifth Amendment right to counsel is likely irrelevant because, if *Miranda* does apply, the interview would be excluded regardless of whether Defendant invoked his right to an attorney because he was never read his *Miranda* rights. *See Miranda*, 384 U.S. at 471. The Court nonetheless addresses this argument.

Marcum: "Sure. And you have every right to do that." Defendant: "But like I said, I do just feel more comfortable like that." Doc. 102, Ex. 1, 89:25–90:13.

These references to an attorney (and other indirect references) are ambiguous as to whether Defendant is requesting an attorney *at the current interview*. *See Davis*, 512 U.S. at 458. This is further supported by the fact that Agent Marcum said, "[i]f you want to stop talking, you can," in response to Defendant's reference to a lawyer, yet Defendant continued to talk. Doc. 102, Ex. 1, 42:13–42:19. Moreover, Agent Cobb testified that she did not know "Alan Maestas" was Defendant's current attorney until after the interview, Doc. 185, 137:1–137:3, and the Fifth Amendment imposes no duty to investigate ambiguous references to counsel. In sum, the Court finds that Defendant did not clearly and unambiguously request counsel.

B. November 15, 2023, Statements

The Court concludes that Defendant's November 15, 2023, statements were not obtained in violation of the Fifth Amendment or Sixth Amendment. Defendant first argues that, even though he was read his *Miranda* rights and signed a waiver, *see* Doc. 121, Ex.1, he invoked (and the officers did not respect) his right to counsel. Doc. 93 at 5–6.[4] Defendant also argues that his Sixth Amendment right to counsel was violated when he was interrogated without an attorney present. Doc. 93 at 6–7. Both arguments are without merit.

Relevant to the November 15 motion is a small set of facts. Defendant was first read his *Miranda* rights and signed a *Miranda* waiver form. Doc. 94, BN3044, 2:20–3:24; Doc. 121-1. A

---

[4] While Defendant does not argue the following as a basis for suppression, he provided a document indicating that Defendant invoked his right to counsel on August 14, 2023, when Defendant told an officer that "[Alan Maestas] was his defense attorney[,] and he would coordinate any future interviews." Doc. 94, BN3037; *see also* Doc. 93-1, Ex. C. Regardless of whether Defendant effectively invoked his right to counsel, more than 14 days passed from that time until he was arrested on November 15, and as a result, officers were free to re-initiate contact without an attorney present. *See Maryland v. Shatzer*, 559 U.S. 98, 110–11 (2010).

couple minutes later, an officer asked, "you do have a warrant, right?" Defendant then responded, "yeah and I was actually going to try to quash that warrant . . . and I had an appointment with Alan Maestas on Tuesday to try to talk to him and stuff like that about it . . . ." Doc. 94, BN3044, 5:00–5:20. After another couple minutes, an officer informed Defendant for the first time that he was being arrested for the present federal charges; this revelation took Defendant by surprise. Doc. 94, BN3044, 6:50–7:10. This context, and Defendant's preceding discussion about a state case, make clear that Defendant's reference to his attorney, Alan Maestas, was for an unrelated state case. Doc. 185 at 110:3–110:18. Nonetheless, Defendant argues that the above statement alone[5] was sufficient to invoke his right to counsel under both the Fifth and Sixth Amendments. *See* Doc. 93 at 2, 5.

    Sixth Amendment. As a threshold matter, the Sixth Amendment applies to the November 15 statements. Defendant was indicted on November 1, 2023. Doc. 3. Defendant was arrested on November 15, 2023. Doc. 3. Because these statements occurred post-indictment, the Sixth Amendment applies. *See Fellers*, 540 U.S. at 523. There is also no dispute that the officers "deliberately elicited" information from Defendant. Doc. 122 at 1–4; *see Massiah*, 446 U.S. at 206.

    The issue, then, is whether Defendant waived his Sixth Amendment right to counsel. *See Fellers*, 540 U.S. at 524–25. The Court finds that Defendant voluntarily, knowingly, and intelligently waived his right to counsel.[6] *See Montejo*, 556 U.S. at 786–87; *Patterson*, 487 U.S. at 296–298. Defendant's waiver can be established in two ways: first, he signed a *Miranda* waiver

---

[5] In its brief, Defendant asserts that he "repeatedly invoked" his right to counsel. Doc. 93 at 5. However, when asked by the Court to list timestamps in addition to the reference to counsel at the 5:02 mark, Defense Counsel could not do so. *See* Doc. 185, 118:15–118:22.
[6] Defendant does not argue involuntariness. *See* Doc. 93. Regardless, nothing in the record suggests that the waiver was made involuntarily.

form expressly waiving his right to counsel, *see* Doc. 121-1; second, after being read his *Miranda* rights, he implicitly waived his right to counsel by willingly communicating with officers. *See Patterson*, 487 U.S. at 291; *Martinez*, 122 F.4th at 406; *Tyler*, 164 F.3d at 156 n.11. It is immaterial that the officer did not inform Defendant of the subject that they would be asking about. *See Martinez*, 122 F.4th at 408 ("Police are not required to inform a suspect of what questions they plan to ask . . . or any other specifics for a waiver to be knowing and intelligent."). Indeed, once advised of *Miranda* rights, all that is required for a waiver to be knowing and intelligent is that Defendant "had the *capacity* to understand *the rights he was waiving*." *Id.* at 408 (citing *Colorado v. Spring*, 479 U.S. 564, 577 (1987)) (emphasis in original). Defendant's subsequent reference to counsel, which was simply a statement about quashing a warrant for an entirely unrelated state case, cannot be reasonably understood to be an invocation of counsel or a revocation of his knowing and intelligent waiver of rights signed two minutes prior, especially when considering his willingness to freely communicate with officers for the duration of the transport. In sum, the Court finds no Sixth Amendment violation.

Fifth Amendment. The Court similarly finds no Fifth Amendment violation. There is no dispute that Defendant was in custody and interrogated during the November 15 transport. However, at the outset, Defendant was read his *Miranda* rights and signed a *Miranda* waiver. Doc. 121-1. The question is therefore whether Defendant's reference to his attorney quashing a warrant in his state case, Doc. 94, BN3044, 5:00–5:20, was an "unambiguous or unequivocal request for counsel" such that a "reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *See Davis*, 512 U.S. at 459, 461–62. The Court finds that it was not. The reference was to an unrelated state case, and it is better understood as a statement in response to an officer's question than a standalone request for an attorney.

Furthermore, no part of the statement could be understood as a request for an attorney at the *current interrogation*.

## CONCLUSION

Accordingly, Defendant's motions to suppress statements made to investigating agents on June 4, 2019, Doc. 88, and statements made to investigating agents on November 15, 2023, Doc. 93, are denied. The Court further denies Defendant's motion to exclude the *Miranda* waiver. Doc. 132.

**It is SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE