IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              No. 23-cr-01620-KWR

JOSHUA GONZALES,

      Defendant.

**ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR A MISTRIAL**

THIS MATTER comes before the Court on Defendant Joshua Gonzales's motion for a mistrial with prejudice. Doc. 227, 3:6–4:1. In brief, Defendant argues that declaring a mistrial is necessary because the United States improperly commented on his pre-arrest silence. *See* Doc. 218 at 4–7. The Court ordered expedited briefing on this matter. Doc. 215. The parties timely responded. *See* Docs. 217, 218, 220, 221. The Court concludes that the arguments raised in the motion lack merit, and therefore, Defendant's motion for a mistrial is **DENIED**.[1]

**BACKGROUND**

On August 14, 2023, FBI Special Agent William (Bill) Walton[2] and another agent met with Defendant at the Taos County Adult Detention Center. Doc. 227, 33:14–33:17. At that time, Defendant was in jail for state charges unrelated to this case. Doc. 227, 33:11–33:12. After arriving

---

[1] The Court previously orally denied Defendant's motion for a mistrial. This opinion memorializes this prior order and explains the Court's reasons for denying the motion.

[2] Agent Walton testified for the first time in this case at an impromptu hearing organized immediately after Defendant moved for a mistrial. *See* Doc. 227. The United States did not plan to call Agent Walton as a witness in its case-in-chief.

at the jail and meeting Defendant in an interview room, the Agents "introduced [themselves], showed [their] credentials, [and] alerted [Defendant] to the fact that [they] weren't there regarding his state charges and asked if he would be willing to talk to [them]." Doc. 227, 33:18–33:25. In response to asking whether he was willing to talk, Agent Walton recalled Defendant stating that "he would prefer to talk with an attorney present, [and] that his attorney had advised him that he should be there for interviews." Doc. 227, 34:10–34:15, 21:16–21:17. Agent Walton, understanding this to be a request for counsel, scrupulously honored this request and did not ask any case-related questions or make any statements designed to elicit an incriminating response. Doc. 227, 21:12–21:19, 35:1–35:8. Agent Walton then gave Defendant his phone to call his attorney to find out whether he was available to meet at that time. Doc. 227, 34:20–35:7. After the call went unanswered, Agent Walton "asked Mr. Gonzales if he would like to arrange [an interview] with his attorney for a convenient date and time," which Defendant responded to by "provid[ing] the phone number [of his attorney] and ask[ing] if [Agent Walton] could contact his attorney directly." Doc. 227, 21:12–22:2, 34:20–35:7.

Three months later, on November 15, 2023, federal agents arrested Defendant in relation to the murders in this case. Doc. 3. FBI Special Agent Bill Walton and Task Force Officer (TFO) Byron Abeyta were tasked with transporting Defendant from Taos to Sante Fe. *See* Doc. 227, 22:19–22:24. The November 2023 interview was the subject of an earlier motion to suppress that the Court denied. *See* Doc. 202.

About a month before trial, Defendant moved to "prohibit the United States from commenting on or introducing evidence regarding Mr. Gonzales'[s] pre-arrest silence . . . on November 15, 2023[,] including his failure to meet with police officers before June 4, 2019." Doc. 81 at 1. While Defendant's proposed prohibition was broadly stated, the substance of his argument

was much narrower: Defendant referenced only "Mr. Gonzales's failure to meet with officers before June 4, 2019." *See* Doc. 81 at 1–2. Defendant explained that, in the June 4 interview, the agents conducting the interview referenced Defendant's failure to show up to an earlier interview on June 1, 2019. Doc. 81 at 1. Defendant made no reference to invoking his right to remain silent on August 14, 2023, or any specific objection to the November 15, 2023, interview recording. The United States responded by stating that it "has no intention to admit improper comment or evidence regarding defendant's silence." Doc. 99 at 1. Seeing this agreement, the Court granted Defendant's motion in a text-only order. Doc. 109.

The United States believed that the November 2023 interview recording contained several incriminating statements. *See* Doc. 217 at 2–3. It therefore included this recording on its exhibit list filed well in advance of trial. Doc. 180 at 3 (United States second amended exhibit list). At trial, during the testimony of TFO Abeyta, the United States moved to admit the November 15 recording as Trial Exhibit 29. Doc. 226, 57:2–57:3. In response, Defendant stated, "we object as we previously noted to the Court." Doc. 226, 57:4–57:9. The Court understood this generalized objection to be in reference to Defendant's previously denied motion to suppress, Doc. 202—the only motion specifically referencing the November 15 recording—and as a result, overruled the objection and admitted the recording in its entirety. Doc. 226, 57:4–57:13. The United States then played the entire recording to the jury over the next two hours after unambiguously stating its intent to do so. Doc. 226, 57:10–57:16 ("[G]iven that the Court has now admitted Government Exhibit 29 in its entirety, what I would like to do is play Government Exhibit 29."). While the United States paused the recording a few times to highlight several of Defendant's statements, at no point did the United States ask any questions about (or otherwise direct attention to) parts of

the conversation touching on Defendant's brief interaction with Agent Walton in August 2023 or any other references to his silence before being arrested.

After the two-hour recording concluded, Defendant argued that the United States impermissibly commented on his August 2023 silence and moved for a mistrial with prejudice. Doc. 227, 3:6–3:24. Specifically, Defendant argued that the United States, by simply playing this recording in its entirety to the jury (without any pauses, comments, or questions relating to these small segments) that captured prior references to his unwillingness to speak with police, caused significant and uncurable prejudice and compelled the Court to declare a mistrial. Defendant cited the following exchange contained in the recording:

- Agent Walton: Where do you recognize me from?
- Defendant: From when you went to go talk to me in the jail the last time.
- Walton: Yeah.
- Defendant: I never forget a face, bro. He's talked to me about three months ago.
- Walton: Oh, I didn't talk to you. You said you didn't want to talk.
- Defendant: I know, but you still talked to me for a minute or two, whether I didn't want to talk or not. He said more than I. That's for sure.

Ex. 29, 1:44:02–1:44:27; Ex. A, 60:1–60:14 (transcript of November 15 interview). Following a brief recess, Defendant expanded his objection to include an additional segment of the recording:

- TFO Abeyta: I feel like if—if I was accused of a murder, right, and I got questioned about it, and then someone—I found out it was someone else, I would remember who—who I heard that from, right?

Ex. A, 27:22–27:25; Doc. 218 at 3.[3] These segments combine to make up less than a minute of the nearly two-hour recording.

---

[3] Defendant also pointed to Ex. A, 61:1–61:5 as another improper reference to Defendant's silence. Doc. 227, 19:20–19:23. This segment captures Defendant stating, "Yeah, I know. You got—you got paid to do your job. You got paid to fucking strike innocent people's lives, because *you're the one that lent me your phone in the jail to call* [inaudible]. Yep. Like I said." Ex. A, 61:1–61:5 (emphasis added). Defendant did not, however, reference this segment in his supplemental briefing. *See* Docs. 218, 220. Because he did not argue why playing this segment was an improper

Defendant did not raise specific objections (or otherwise notify the Court or the United States) to these parts of the November 15 recording either before or during its publication to the jury. Instead, he waited until the recording was played in its entirety to the jury and after its redaction was made impossible. While Defendant repeatedly and adamantly stated that his prior motion to prohibit the United States from commenting on his silence, Doc. 81, gave the Court and the United States notice to this specific objection (and suggested that the United States contravened this order when it played the November 15 recording), as discussed above, this generally-stated objection—which omitted any specific reference to his August silence or the November recording—insufficiently notified the Court or the United States of this purported issue.[4]

---

reference to his silence, the Court concludes that he waived this argument. The Court nonetheless notes that this reference to Defendant's silence is too tenuous to rise to a Constitutional violation because, without the context of the August 2023 conversation, a juror would not understand the significance of Agent Walton lending Defendant his phone on a prior occasion.

[4] Defendant never asked for or proposed any curative instruction (or any other alternative action) after moving for a mistrial. *See* Fed. R. Crim. P. 26.3 ("Before ordering a mistrial, the court must give each defendant and the government an opportunity . . . to suggest alternatives."); Doc. 227, 15:8–15:12 ("[T]he United States would just like to note that it would not oppose any sort of curative instruction from defense counsel, especially in light of the circumstance of that particular statement within the broader context of a nearly two-hour interrogation."); Doc. 217 at 12; Doc. 218 at 9 ("No curative instruction is sufficient."). As a result, the only action for the Court to consider was whether to grant or deny a mistrial. The Court did not unilaterally propose its own curative instruction because it did not want to incidentally act against Defendant's wishes by calling to the jury's attention the brief and largely innocuous references to his silence contained in the recording. Still, the Court notes that the jury instructions used in this case twice reminded the jury that the defendant has a right to remain silent under the Constitution. Doc. 232 at 22, 24; *see United States v. Houghton*, 66 F.3d 339, *2–3 (10th Cir. 1995) (unpublished) ("[A]lthough [the defendant] failed to request a cautionary instruction, the court's general instructions on the issue [stating "that the jury was not to draw any inferences from any defendant's failure to testify"] adequately cured the error.").

**DISCUSSION**

I.      **Legal Standard**

A district should grant a motion for a mistrial if it concludes that "the defendant's right to a fair and impartial trial was impaired." *United States v. Gabaldon*, 91 F.3d 91, 93 (10th Cir. 1996) (citing *United States v. Torres*, 959 F.2d 858, 860 (10th Cir. 1992)) (citation modified). Prosecutorial misconduct resulting in constitutional error, such as improperly commenting on a defendant's silence, can be grounds for a mistrial. *See Gabaldon*, 91 F.3d at 93; *United States v. Phillips*, 71 F.4th 817, 825–26 (10th Cir. 2023); *United States v. Coleman*, 7 F.3d 1500, 1506 (10th Cir. 1993).

II.     **Analysis**

The Court concludes that the United States did not improperly comment on Defendant's pre-arrest silence when it published the November 15, 2023, interview recording in its entirety to the jury. The Court first finds that Defendant did not invoke his right to remain silent on August 14, 2023. *See infra* section A. Even if Defendant did invoke his right to remain silent, the brief references to his pre-arrest silence contained in the November 15 recording do not violate the Fifth Amendment's Due Process Clause.[5] *See infra* section B. Accordingly, Defendant's motion for a mistrial is properly denied. *See Gabaldon*, 91 F.3d at 93.

A.  Defendant did not invoke the right to remain silent on August 14, 2023.

Defendant did not invoke his right to remain silent on August 14, 2023. The Fifth Amendment privilege to remain silent must be expressly invoked. *See Salinas v. Texas*, 570 U.S. 178, 181, 186–87 (2013); *Minnesota v. Murphy*, 465 U.S. 420, 427–28 (1984). Though "[t]he

---

[5] The Fifth Amendment's and Fourteenth Amendment's Due Process Clauses are coextensive. *See generally Heiner v. Donnan*, 285 U.S. 312, 326 (1932) ("Nor is it material that the Fourteenth Amendment was involved in the Schlesinger Case, instead of the Fifth Amendment, as here. The restraint imposed . . . by the due process clauses of the two amendments is the same.").

invocation of the privilege against self-incrimination must be given a liberal construction" and "does not require any special combination of words," *United States v. Burson*, 952 F.2d 1196, 1200 (10th Cir. 1991), a suspect must invoke his right to remain silent "unambiguously," *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (adopting the objective standard from *Davis v. United States*, 512 U.S. 452, 459 (1994), to determine whether a suspect invokes the right to remain silent). A suspect thus does not invoke his right to remain silent if his statement to investigators is "ambiguous or equivocal." *Thompkins*, 560 U.S. at 381. In practice, this means that a suspect "must articulate his desire to [remain silent] sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be [an invocation of the right to remain silent]." *See Davis*, 512 U.S. at 459; *Thompkins*, 560 U.S. at 381–82.

The Court concludes that Defendant did not unambiguously or unequivocally invoke his right to remain silent in August 2023 because his statement to Agent Walton could be reasonably interpreted under the circumstances to mean something other than a desire to remain silent. In response to Agent Walton's request to speak with him, Defendant stated that "he would prefer to talk with an attorney present, [and] that his attorney had advised him that he should be there for interviews." Doc. 227, 34:10–34:15, 21:16–21:17.[6] Rather than clearly and unambiguously expressing a desire to remain silent, this statement did the opposite: Defendant expressed a willingness to communicate with the Agents when he agreed to call his attorney to see whether he was currently available, and when the call went unanswered, invited Agent Walton to directly contact his attorney to set up an interview. *See* Doc. 227, 34:18–34:25 (Agent Walton: "I gave him

---

[6] Agent Walton authored a FD-302 Report on October 30, 2023, memorializing several interactions with Defendant. *See* Doc. 93-1 ("During an attempted interview of [Defendant] on August 14th, 2023[,] [Defendant] advised writer that Alex Maestas was his defense attorney and [that] he would coordinate any future interviews.").

7

my phone. He said that he could call his attorney and see if he would come down to meet with us at that time. He did make a phone call. It went unanswered, and then we proceeded to discuss if we prefer that I continue to try and contact his attorney and set up a future interview, to which he agreed, and we left."). Agent Walton also had no reason under the circumstances to think that Defendant's preference to answer questions in the presence of counsel was also an invocation of the right to remain silent. Defendant was not in custody or being accused of or questioned about any crime. *See infra* note 7. In fact, Agent Walton did not even inform Defendant what he was there to talk to him about, Doc. 227, 34:5–34:9, and it had been more than four years since the murders occurred in this case and investigators last interviewed him, *see* Trial Ex. 19 (June 4, 2019, interview); Doc. 213 at 3 (United States fifth amended exhibit list). It seems perfectly reasonable for Defendant, considering his own familiarity with the justice system, to be willing to speak to investigators about some unspecified crime while still wanting to take the precaution of having an attorney present.

The two cases Defendant cites in support of his position that he invoked his right to remain silent are factually distinguishable. In *Burson*, the Tenth Circuit reasoned that the defendant invoked his Fifth Amendment right to remain silent despite not receiving *Miranda* warnings because "it [was] clear the investigators wished to ask [the defendant] about [specific] financial and property transactions" and "that [the defendant] knew he was being interrogated as a part of a criminal investigation." 952 F.2d at 1200. Here, Defendant was never asked case-specific questions, and while Agent Walton generally informed him that he was there as part of an investigation, Defendant was never given a reason to think that the investigation related to the murders in this case.

Defendant's reliance on *United States v. McKinnell*, 888 F.2d 669, 677 (10th Cir. 1989), *abrogated in part by United States v. Wacker*, 72 F.3d 1453, 1463–64 (10th Cir. 1995), is similarly misplaced. In *McKinnell*, the defendant invoked his right to silence only after being advised of his *Miranda* rights while in custody. *See* 72 F.3d at 677. These circumstances are fundamentally different from this case: After a person is advised of their *Miranda* rights, a reasonable person would think that they are a suspect in the crime being investigated. Here, Defendant was not given *Miranda* warnings, he had no knowledge of the investigation's subject, and the Agents asked no case-related questions. In other words, the Agents had not given Defendant a reason to believe he was a suspect. In short, context matters: A person expressing a willingness to speak to investigators in the presence of an attorney can take on different meanings in different contexts, and under the circumstances of the August 2023 conversation, Defendant's request to schedule an interview with his attorney was not an unambiguous invocation of his right to remain silent. *See Davis*, 512 U.S. at 459; *Thompkins*, 560 U.S. at 381–82.

B. Even if Defendant had previously invoked his right to remain silent, the brief references at trial to his pre-arrest silence did not violate the Fifth Amendment's Due Process Clause.

If a suspect does not unambiguously invoke the right to remain silent, the prosecution can use his noncustodial silence against him. *See Salinas*, 570 U.S. at 183 (concluding that it need not decide "whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief" because the suspect "did not invoke the privilege during his interview"). In other words, a defendant must "assert the privilege to subsequently benefit from it." *Id.* at 190.[7] It was permissible, then, for the

---

[7] One exception to the general rule that a suspect must expressly invoke the right to remain silent is when "a suspect . . . is subjected to the 'inherently compelling pressures' of an unwarned custodial interrogation." *Salinas*, 570 U.S. at 184–85 (citing *Miranda v. Arizona*, 384 U.S. 436,

United States to refer to Defendant's August 2023 statements because he did not unambiguously invoke the right to remain silent. *See supra* section A.

But even if Defendant invoked his right to remain silent in August 2023, the brief references at trial to this silence do not violate the Due Process Clause. As an initial matter, the law distinguishes between pre- and post-arrest (or pre- and post-*Miranda*) silence. *Compare Doyle v. Ohio*, 426 U.S. 610, 618–19 (1976) (holding that the use of post-*Miranda* silence to impeach a defendant violates the Due Process Clause), *with Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (per curiam) (allowing the use of post-arrest, pre-*Miranda* silence to impeach a testifying defendant), *and Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (allowing the use of pre-arrest silence to impeach a defendant). In short, a defendant's post-*Miranda* silence imposes greater restraints on a prosecutor's ability to use his silence at trial than a defendant's pre-arrest and pre-*Miranda* silence because, when a defendant is read his *Miranda* rights, he is implicitly assured "that silence will carry no penalty." *See Doyle*, 426 U.S. at 619; *Fletcher*, 455 U.S. at 606–07.

---

467–68, and n. 37 (1966)). This exception does not apply to this case because Agent Walton neither placed Defendant in custody nor interrogated him. Though Defendant met Agent Walton in an interview room while in jail, Agent Walton did not impose any increases in restrictions or restraints on his liberty, did not make any promises or threats, and did not otherwise subject him to a significantly unfamiliar environment. Doc. 227, 35:19–36:3. The Court therefore concludes that Defendant was not in custody during this brief interaction. *See Howes v. Fields*, 565 U.S. 499, 511–12 (2012) ("[S]tandard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation. Thus, service of a term of imprisonment, without more, is not enough to constitute *Miranda* custody."). Moreover, Agent Walton did not ask any case-related questions or make any statements designed to elicit an incriminating response. Doc. 227, 21:12–21:19, 35:1–35:8. The Court thus concludes that Defendant was not interrogated. *See Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) ("[Interrogation] refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect."); *see also United States v. Sanchez*, 13 F.4th 1063, 1074 (10th Cir. 2021).

Defendant's August 2023 silence is properly categorized as pre-arrest, pre-*Miranda* silence.[8] Defendant was not under arrest until November 2023. *See* Doc. 3. He was also not in custody during this brief conversation. *See supra* note 7. And Agent Walton did not read to Defendant his *Miranda* rights (nor was he obligated to). Doc. 227, 34:1–34:4; *see also supra* note 7.

The United States's publication of Defendant's pre-arrest silence did not violate the Fifth Amendment's Due Process Clause. To be sure, the "[u]se of a defendant's invocation of *Miranda* rights against the defendant at trial violates the Due Process Clause." *United States v.* Oliver, 278 F.3d 1035, 1039 (10th Cir. 2001). But "[a] prosecutor's statement or question relating to the invocation of *Miranda* rights . . . does not always rise to the level of a constitutional *Doyle* violation." *Id*. To determine whether publishing the November 2023 interview recording (containing references to Defendant's August 2023 invocation of his right to remain silent) to the jury violated his right to Due Process, the Court must first decide "whether the prosecutor's question constituted a 'use' of the defendant's *Miranda* rights." *Id.* (citing *Greer v. Miller*, 483 U.S. 756, 763 (1987)). "If not, [the] second step is to ask whether the question so unfairly prejudiced the defendant as to rise to the level of a due process violation." *Id.* (citing *Greer*, 483 U.S. at 765).

### 1. *The United States's "Use" of Defendant's Pre-Arrest Silence*

The Court concludes that the United States did not improperly "use" Defendant's pre-arrest silence against him when it published the November 2023 interview to the jury. In the typical case

---

[8] Because the alleged invocation of silence occurred pre-arrest *and* pre-*Miranda*, the Court uses "pre-arrest" and "pre-*Miranda*" interchangeably when discussing Defendant's silence (while remaining cognizant of the doctrinal differences between the two).

"in which [the Supreme Court] has applied *Doyle*, the trial court . . . permitted specific inquiry or argument respecting the defendant's . . . silence." *See Greer*, 483 U.S. at 763 (collecting cases). The instant case stands in stark contrast to the usual case just described. Here, the United States did not make (and the Court did not permit) any statements or argument or ask any questions about the segments of the November 2023 interview containing references to Defendant's August 2023 silence. *See id.* ("In contrast to [the usual case], . . . . the court explicitly sustained an objection to the only question that touched upon [the defendant's] post arrest silence . . . . [and] [n]o further questioning or argument with respect to [the defendant's] silence occurred . . . ."). Put differently, the prosecutors did not "comment on" or "refer to" his silence whatsoever. *Cf. Burson*, 952 F.2d at 1200–01. While emphasizing specific segments or playing limited parts of an interview could be considered functionally equivalent to eliciting testimony from a witness, merely playing an almost two-hour recording—that includes less than a minute of statements referencing Defendant's pre-arrest silence—in its entirety (and pausing it several times only to emphasize his inculpatory, non-silence related statements) is not so. Simply put, the United States did not "use" Defendant's silence against him. *See Greer*, 483 U.S. at 763; *United States v. Lane*, 883 F.2d 1484, 1494 (10th Cir. 1989) (concluding that a prosecutor's brief reference to a defendant's silence was not "used" against him because "[t]he prosecutor did not pursue the issue further, nor mention it in his closing argument").

Defendant's own behavior bolsters this conclusion: His decision to not request a specific curative instruction indicates that the interview's cursory references to his pre-arrest silence was not used against him in a way likely to cause any meaningful harm. *See Greer*, 483 U.S. at 764 n. 5 ("[T]he sequence of events at the trial, beginning with the single comment—but including particularly the proper and immediate action by the trial court, and the failure by defense counsel

to request more specific instructions—indicates that [the defendant's] post arrest silence was not used against him within the meaning of *Doyle*."); *Lane*, 883 F.2d at 1494 (noting that, "[a]t the conclusion of the evidence, defense counsel did not revert his objection or request an instruction on the prosecutor's question"); *Oliver*, 278 F.3d at 1040 (noting that "[t]he judge offered to issue a limiting instruction, which [the defendant] rejected"); *supra* note 4.

### 2. Unfair Prejudice

The United States did not "use" Defendant's pre-arrest silence against him, *see supra* section B.1, and the brief references to his silence contained in the exhibit did not "so unfairly prejudice[] the defendant as to rise to the level of a due process violation." *See Oliver*, 278 F.3d at 1039. "To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Put differently, the reference to Defendant's pre-arrest silence must "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (citation modified).

Defendant's invocation of his right to remain silent occurring pre-arrest (or pre-*Miranda*), rather than post-arrest (or post-*Miranda*), itself reduces the baseline unfairness of any reference to his silence at trial. While the Supreme Court has not yet decided the question of whether noncustodial pre-*Miranda* silence can be "use[d] by the prosecution on the issue of guilt," *see Carter v. Ward*, 347 F.3d 860, 863–64 (10th Cir. 2003); *Salinas*, 570 U.S. at 183, it has repeatedly emphasized that the inherent unfairness associated with post-*Miranda* silence is significantly less than with pre-*Miranda* silence, *see Jenkins*, 447 U.S. at 240 (holding that impeachment using prearrest silence is not fundamentally unfair because "no governmental action induced [the

defendant] to remain silent"); *Brecht v. Abrahamson*, 507 U.S. 619, 628 (1993) (explaining that

pre-*Miranda* silence can be used for impeachment purposes because it "does not rest on any

implied assurance by law enforcement authorities that [remaining silent] will carry no penalty").[9]

Here, Agent Walton never expressly or impliedly assured Defendant that his silence would not be

used against him. This fact alone strongly counsels against finding unfair prejudice.

The references to Defendant's silence contained in the recording do not make plain that he

exercised his *Miranda* rights. *See, e.g., Oliver*, 278 F.3d at 1040. To reiterate, Defendant points to

two exchanges captured in the audio recording:

- TFO Abeyta: "I feel like if—if I was accused of a murder, right, and I got questioned about it, and then someone—I found out it was someone else, I would remember who—who I heard that from, right?" Ex. A, 27:22–27:25.
- Defendant: "I never forget a face, bro. He's talked to me about three months ago." Agent Walton: "Oh, I didn't talk to you. You said you didn't want to talk." Defendant: "I know, but you still talked to me for a minute or two, whether I didn't want to talk or not. He said more than I. That's for sure." Ex. A, 60:1–60:14.

The first segment does not clearly refer to Defendant remaining silent or even being unwilling to

speak to police; rather, TFO Abeyta's statement can be reasonably understood as a reference to

Defendant's poor memory or a veiled accusation that he is fabricating his story. More importantly,

the Court does not understand how this statement refers to his invocation of silence in August 2023

or any prior invocation of silence at all. The second segment also does not clearly establish to the

---

[9] The Tenth Circuit's decision in *Burson* could stand for the proposition that the use of pre-*Miranda* silence in the prosecution's case-in-chief violates due process. *See* 952 F.2d at 1200–01. But the Court does not understand this decision, which resolves the issue in only two paragraphs with only a cursory reference to the broad, later-limited statement of the law in *Griffin v. California*, 380 U.S. 609, 615 (1965), and without confronting any of the Supreme Court's reasoning about unwarned silence in the years following *Griffin* and preceding *Burson*, to promulgate a bright-line rule. And as discussed *supra* section A, the facts in *Burson* are distinguishable from this case. The Court therefore concludes that the question of whether a suspect's pre-*Miranda* silence can be used in the prosecution's case-in-chief under these facts remains unresolved in the Tenth Circuit.

jury that Defendant had previously exercised his right to remain silent. The exchange contains no reference to Defendant being arrested or in custody for the crimes charged in the case, the subject that Agent Walton wanted to talk to him about, or any other details about the encounter. Moreover, after Agent Walton stated that Defendant did not want to talk, Defendant clarified that they nonetheless briefly talked; this appears to contradict the implication that Defendant had just invoked his right to remain silent. Finally, Agent Walton made the statement at issue in response to Defendant saying that he recognized him from an earlier encounter; Agent Walton's response is reasonably interpreted as clarifying the nature of their former interaction rather than commenting on a previous invocation of silence. The Court thus finds that it would be unclear to a reasonable juror based on this brief exchange alone whether Defendant was exercising his absolute right to remain silent when he met Agent Walton three months prior. In short, because the segments of the recording at issue do not make plain that Defendant previously invoked his right to remain silent, the Court finds that its publication to the jury did not unfairly prejudice Defendant. *See Oliver*, 278 F.3d at 1040.

Perhaps most important to the Court's prejudice analysis is the incredibly limited use of the statements at issue: The United States did not question any witness about Defendant's (un)willingness to speak with police, did not argue or imply that his silence indicates guilt, or call any attention to the cursory references to Defendant's silence contained in a nearly two-hour recording. The Tenth Circuit has consistently concluded that similarly limited references to a defendant's silence are harmless. In one such case, the Tenth Circuit explained:

> With respect to the intensity and frequency of the improper reference, here we are dealing with one off-the-cuff comment that was not repeated or highlighted at any other point in the trial. This situation, therefore, stands in obvious contrast to those cases where the prosecution makes frequent use of the defendant's post-arrest silence by, for example, lengthy cross-examination or arguments in closing that the defendant's silence is evidence of his guilt.

15

*United States v. Lauder*, 409 F.3d 1254, 1261–62 (10th Cir. 2005); *see also United States v. Hamilton*, 587 F.3d 1199, 1218 (10th Cir. 2009) ("[T]he sole reference to [the defendant's] silence was brief, factual, and nonaccusatory."); *Bland v. Sirmons*, 459 F.3d 999, 1023 (10th Cir. 2006); *Greer*, 483 U.S. at 765–67.

The Court therefore concludes that the United States's publication of the November 2023 interview recording containing references Defendant's pre-arrest silence did not "so unfairly prejudice[] [him] as to rise to the level of a due process violation." *See Oliver*, 278 F.3d at 1039.

\* \* \*

The United States alternatively argues that Defendant invited error here. Because Defendant's motion fails for the many reasons explained above, the Court need not consider this issue. The Court nonetheless makes a few observations. From the start, the United States made plain its intention to not improperly comment on or introduce evidence revealing Defendant's silence or failure to meet with investigators. *See* Doc. 99. The Court has no doubt that, had Defense Counsel brought to the United States's attention the alleged references to Defendant's silence before the November 2023 recording was played to the jury, the United States would have taken immediate steps to alleviate their concerns. Yet Defense Counsel made the conscious decision to not do this. Instead, he waited until the jury listened to the entire two-hour interview—without making any contemporaneous objections to the segments at issue—before making his concerns about the November 2023 recording known to the Court or the United States. In short, even if Defendant's motion had merit, "rewarding [Defense Counsel] for holding his objection in his back pocket hoping it might ultimately work in his client's favor" encourages litigants to abuse the judicial process. *See United States v. Turrietta*, 696 F.3d 972, 985 (10th Cir. 2012).

**CONCLUSION**

Defendant did not invoke the right to remain silent on August 14, 2023. Even if he did, the brief references at trial to his pre-arrest silence did not violate the Fifth Amendment's Due Process Clause. Accordingly, Defendant's motion for a mistrial with prejudice, Doc. 227, 3:6–4:1, is denied.

**It is SO ORDERED**.

\_\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE